UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KAREEM AHMED YOUSRY ABDELRAOF AHMED,<br>　　　　　*Plaintiff*,<br><br>　　　v.<br><br>MARCO RUBIO, *et al.*,<br>　　　　　　*Defendants*. | No. 1:25-cv-02116-MSN-WBP |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kareem Ahmed Yousry Abdelraof Ahmed brought suit against the United States

Secretary of State Marco Rubio and the National Vetting Center Acting Director Kenneth Platek

("Defendants") for failing to timely adjudicate his H-1B visa application. ECF 1. Now before the

Court is Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction and Failure

to State a Claim. ECF 8. For the reasons that follow, the Court will deny Defendants' Motion.

## I.　　BACKGROUND

### A.　　H1-B Visas

The Immigration and Nationality Act ("INA") created a special visa program, known as

the H1-B visa, to allow U.S. employers to temporarily employ foreign workers in specialty

occupations. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 C.F.R. § 214.2(h)(1)(ii)(B). H-1B visas are a

type of "nonimmigrant" visa. *See* 8 U.S.C. § 1101(a)(15). A person is eligible for an H1-B visa if,

among other things, they work in a job that demands "highly specialized knowledge"—such as

architecture, engineering, mathematics, physical sciences, social sciences, and medicine—and

have, at minimum, a bachelor's degree. 8 U.S.C. § 1184(i)(1); 8 C.F.R. § 214.2(h)(4)(ii).

To obtain an H-1B visa, an employer must first file an application with the U.S. Department of Labor to certify that, by hiring a foreign national, the employer will not adversely impact American workers' pay and conditions. 8 U.S.C. § 1182(n); *see also* 8 C.F.R. § 214.2(h)(4)(i)(B)(1). After receiving an approved certification from the Department of Labor, an employer must file a Petition for a Nonimmigrant Worker with the United States Citizenship and Immigration Services ("USCIS"). *See* 8 C.F.R. §§ 214.2(h)(2)(A). If USCIS approves the petition, then the visa beneficiary must apply for the visa by submitting a form and appearing at a U.S. Embassy or Consulate for an interview with a consular officer. 8 U.S.C. §§ 1201(a)(1)(B), 1202(c); 22 C.F.R. § 41.102(a).

Once a visa application has been properly completed, "the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). The consulate's job is to ensure that an applicant is admissible to the United States and otherwise eligible. If it "appears" to a consular officer that an applicant is ineligible to receive a visa, then "[n]o visa . . . shall be issued." 8 U.S.C. § 1201(g) (also referred to as "INA § 221(g)"). If a consular officer determines that additional information is required from an applicant or that an Advisory Opinion— known as "administrative processing"—is necessary to determine an applicant's eligibility, then the officer must deny the application under INA § 221(g), pending further consideration. *Jahangiri v. Blinken*, No. CV DKC 23-2722, 2024 WL 1656269, at *1 (D. Md. Apr. 17, 2024).

In the event that a consular officer initially refuses to issue a visa under INA § 221(g), that refusal must be reviewed by a supervisor. 22 C.F.R. § 41.121(c). If the supervisor determines that the grounds of ineligibility upon which the visa was refused "cannot be overcome by the presentation of additional evidence, the refusal must be reviewed without delay; that is, on the day of the refusal or as soon as it is administratively possible." *Id.* "If the ground(s) of ineligibility

2

may be overcome by the presentation of additional evidence, and the applicant has indicated the intention to submit such evidence, a review of the refusal may be deferred for not more than 120 days." *Id.*

### B.      Factual Background and Procedural History[1]

Plaintiff is a citizen of Egypt. ECF 1 ¶ 62. He previously earned a Ph.D. from the University of California, Los Angeles in Computer Science: Artificial Intelligence, and currently works as a postdoctoral researcher at the University of California, Irvine ("UCI"), where he researches neuro-symbolic artificial intelligence. *Id.* ¶¶ 62-63.

On March 4, 2025, USCIS approved the H1-B visa petition that UCI submitted on Plaintiff's behalf. *Id.* ¶ 64. USCIS's approval is valid from March 4, 2025, to August 14, 2026. *Id.* ¶ 65; ECF 1-4 at 1. On March 24, 2025, Plaintiff filed his application for an H1-B visa. ECF 1 ¶ 66. He then attended a visa interview at the U.S. Embassy in Singapore on April 22, 2025. *Id.* ¶ 68.

At the conclusion of Plaintiff's interview, an embassy officer informed him that his case had been "temporarily refused" under INA § 221(g), and he would be placed in administrative processing pending the collection of additional information. ECF 1 ¶¶ 68-69. The Embassy asked Plaintiff to provide a letter from UCI confirming his ongoing employment, start date, and salary; a detailed travel itinerary within the U.S.; an invitation letter from UCI; his complete curriculum vitae with a full list of publications; copies of his academic transcripts; and his research plan. *Id.* ¶ 69; ECF 1-5. Plaintiff provided the Embassy with all of the requested information and, on April 28, 2025, the Embassy confirmed receipt. ECF 1 ¶ 70. More than a year later, Plaintiff has not received a response on his visa application. *See id.* ¶ 72. He alleges that the delay has set back his career trajectory, significantly delayed and jeopardized his research, undermined UCI's projects,

---

[1] The court draws the following facts, accepted as true, from Plaintiff's Complaint. *Johnson v. Balt. City*, 163 F.4th 808, 814 (4th Cir. 2026).

disrupted his ability to mentor students, and forced him to miss conferences that he organized or at which he was scheduled to present. *Id.* ¶¶ 77-80. The delay also separated Plaintiff from his fiancée for five months until she relocated to be with him, and has delayed their plans to marry. *Id.* ¶ 81.

On November 20, 2025, Plaintiff filed the Complaint in this action. ECF 1. Plaintiff alleges that Defendants violated the Administrative Procedure Act ("APA") under 5 U.S.C. §§ 706(1), (2), and 555(b), and the Mandamus Act, 28 U.S.C. § 1361, by withholding and unreasonably delaying the adjudication of his visa application. Defendants move to dismiss.

## II.    LEGAL STANDARD

### Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. There are two ways in which a defendant may prevail on a Rule 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a plaintiff may mount a factual challenge to subject matter jurisdiction by arguing "that the jurisdictional allegations of the complaint are not true." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (cleaned up). In such a case, "the presumption of truthfulness normally accorded a complaint's allegations does not apply," and the Court may consider extrinsic evidence. *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Under either method, the plaintiff bears the burden of establishing a basis for the Court's jurisdiction by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

### A.    Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of a complaint." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (internal quotation marks omitted). At the pleading stage, the Court must "accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Johnson v. Balt. City*, 163 F.4th 808, 814 (4th Cir. 2026). To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.    ANALYSIS

Defendants advance three arguments in support of their Motion to Dismiss. First, they claim that Plaintiff lacks standing to bring suit. Second, they argue that the Court lacks subject matter jurisdiction over this action because Plaintiff has not shown that Defendants violated a clear, non-discretionary duty to adjudicate his visa application. Finally, they contend that Plaintiff's claims are barred by the doctrine of consular non-reviewability. The Court addresses each argument in order.

### A.    Standing

Under Article III of the Constitution, federal courts may only adjudicate "Cases" and "Controversies," of which the doctrine of standing "is an essential and unchanging part." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that

5

the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). At the motion to dismiss stage, a plaintiff need only plausibly allege each element. *See id.* at 431 (explaining that "[a] plaintiff must demonstrate standing with the manner and degree of evidence required at the successive stages of the litigation" (internal quotation marks omitted)).

Defendants argue that Plaintiff has not adequately established standing in this action because he has no right to enter the United States. ECF 9 at 8-10. Defendants claim that, because Plaintiff lacks a right of entry, he cannot show that he has been harmed by any delay in adjudicating his visa application. *Id.*

Defendants' argument is misguided. It is true that Plaintiff does not hold an absolute right to receive a visa or enter the country. Yet visa applicants do enjoy a "procedural right to reasonably expeditious agency action that is tethered to [their] concrete professional and financial interest[s]." *Babaei v. U.S. Dep't of State*, 725 F. Supp. 3d 20, 26 (D.D.C. 2024) (quoting *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023)). Such is the case here. Plaintiff's Complaint outlines how Defendants' failure to timely process his visa has, among other things, jeopardized his research, delayed his work on projects tied to federal grants, and forced him to miss presentations and conferences. ECF 1 ¶¶ 77-78, 80. These allegations more than plausibly allege an injury in fact.

While Defendants do not directly challenge the remaining elements of standing, the Court finds that they are easily met. There is no dispute that Defendants' actions have caused the harms at issue in this case. And, as explained below, Plaintiff's injuries may be redressed by an order requiring Defendants to complete their review more expeditiously. *See infra*; *see also Babaei*, 725

F. Supp. 3d at 27 (explaining that plaintiffs' "injuries—unreasonable delay—would be redressed by a decision, one way or the other"). Plaintiff therefore has standing to sue.

### B.        Non-Discretionary Duty

Next, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims under both the APA and the Mandamus Act because Defendants have already adjudicated Plaintiff's visa application. ECF 9 at 10. They contend that, having issued an initial refusal of his application, there is no "clear, non-discretionary duty" for Defendants to act further. *Id.* The Court disagrees.

The APA authorizes individuals to sue if they have "suffer[ed] [a] legal wrong because of [an] agency action" or have been "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. "[A]gency action," includes an agency's "failure to act." *Id.* § 551(13). The APA also explicitly provides relief if an agency fails to take appropriate action. Under 5 U.S.C. § 555, the APA directs agencies to "proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). And under 5 U.S.C. § 706(1), a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

An agency's failure to act, however, is not always remediable under the APA. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004). Section 706(1) only allows a plaintiff to compel an agency to act where it has "failed to take a *discrete . . .* action that it is *required to take.*" *Id.* at 64 (emphasis in original). The same is true of a writ of mandamus. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.9 (4th Cir. 2021) ("To succeed on a petition for a writ of mandamus, the petitioner must show, among other things, that the respondent had a clear duty to do the particular act requested by the petitioner." (internal quotation marks omitted)); *see also Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024) (explaining that 5 U.S.C. § 706(1) is derived from mandamus); *Al-Gharawy v. U.S.*

*Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (explaining that, when a plaintiff brings an unreasonable delay claim under both the APA and Mandamus Act, "those claims merge"). "[W]here an agency is not required to do something, [a court] cannot compel the agency to act—let alone to act faster." *Gonzalez*, 985 F.3d at 366.

To assess whether an agency is bound to act, a court must "look to the text of the relevant statutes and regulations." *Lovo*, 107 F.4th at 211. The presence of mandatory language, "such as the word 'will,' can provide sufficient evidence of the unequivocal command required for [the Court] to hold that an agency is compelled to act." *Id.* But, ultimately, the inquiry is context dependent. *Id.* at 212.

Here, as outlined above, the operative regulation requires that, "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). If a visa is refused, the regulation mandates that such a refusal "*must* be reviewed . . . by consular supervisors, or a designated alternate, to ensure compliance with laws and procedures." *Id.* § 41.121(c) (emphasis added). Lastly, the regulation provides that:

> [i]f the ground(s) of ineligibility upon which the visa was refused cannot be overcome by the presentation of additional evidence, the refusal *must be reviewed without delay*; that is, on the day of the refusal or as soon as it is administratively possible. If the ground(s) of ineligibility may be overcome by the presentation of additional evidence, and the applicant has indicated the intention to submit such evidence, a review of the refusal *may be deferred for not more than 120 days*. If the reviewing officer disagrees with the decision and he or she has a consular commission and title, the reviewing officer can assume responsibility and readjudicate the case. If the reviewing officer does not have a consular commission and title, he or she must consult with the adjudicating officer, or with the Visa Office, to resolve any disagreement.

*Id.* (emphasis added).

8

The regulation's mandatory language—that a refusal "*must* be reviewed" and such review "may be deferred for *not more than* 120 days," *id.* (emphasis added), "indicates that the consular officer has a duty to further process a temporarily refused visa," *Canaza v. Platek*, No. CV 25-303-BAH, 2026 WL 811234, at *12 (D. Md. Mar. 24, 2026). Put differently, if a consulate officer provisionally denies a visa application under INA § 221(g), then § 41.121(c) requires the officer to consider any additional evidence the applicant submits and re-review the visa application within 120 days. And while the regulation uses discretionary language to state that an officer with a consular commission "*can* assume responsibility and readjudicate the case," 22 C.F.R. § 41.121(c) (emphasis added), that discretionary language is about "*who* may conduct the mandated review of a refused visa, not whether it must be done at all," *Canaza*, 2026 WL 811234, at *12.

Defendants contest the significance of § 41.121(c). They argue that all that is required under the regulations is for the consulate to issue or refuse the visa, which it did by refusing Plaintiff's application before putting him in administrative processing. ECF 9 at 14 (citing 22 C.F.R. § 41.121(a)). Furthermore, they claim that, while the text of § 41.121(c) "clearly indicates that a review of a refusal may be deferred for no more than 120 days . . . there is nothing else in the regulation mandating a consular officer to re-adjudicate Plaintiff['s] visa application[]." ECF 9 at 18-19.

But to require more would be to require redundancy. Section 41.121(c) makes clear that a review of a refusal "must" be done within 120 days and lays out a procedure for re-adjudicating a refusal. 22 C.F.R. § 41.121(c). If the State Department had fully discharged its duties by issuing its initial denial decision, § 41.121(c) would be a nullity.

The Court recognizes—and Defendants rightfully point out—that this Court has previously come to the opposite conclusion. In *Khorami v. U.S. Department of State*, the Court held that

9

defendants had fulfilled their duties to adjudicate a nonimmigrant visa "when the consular officer refused the visa application pursuant to INA § 221(g)." No. 1:24-CV-2082 (MSN/LRV), 2025 WL 1194990, at *3 (E.D. Va. Apr. 24, 2025). But the plaintiff in *Khorami* never raised § 41.121(c), and so that part of the regulations went unaddressed. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment, *Khorami*, 2025 WL 1194990, ECF 16.

Defendants also point out that numerous other courts in this district have concluded the government has no duty to further adjudicate a nonimmigrant visa application after issuing a refusal under INA § 221(g). *See, e.g.*, *Vafamand v. Platek*, No. 1:25-CV-677-AJT-IDD, 2025 WL 2621796, at *2 (E.D. Va. Sept. 8, 2025); *Haddad v. Platek*, No. 1:24-CV-2289, 2025 WL 2490653, at *3 (E.D. Va. Aug. 4, 2025); *Khalilijourabchian v. Hawkins*, No. 1:24-CV-02283-AJT-IDD, 2025 WL 1655330, at *3 (E.D. Va. June 10, 2025). But those decisions also failed to account for the government's obligations under § 41.121(c). Moreover, each of these decisions principally relied on this Court's opinion in *Berenjian v. Blinken*, No. 1:24-CV-00663-MSN-IDD, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024). *See Vafamand*, 2025 WL 2621796, at *2; *Haddad*, 2025 WL 2490653, at *3; *Khalilijourabchian*, 2025 WL 1655330, at *3. In *Berenjian*, however, the Court cited to the regulatory framework for issuing and denying *immigrant* visas, as opposed to the regulations at issue here that govern *nonimmigrant* visas. *See* 2024 WL 3732451, at *3 (citing 22 C.F.R. § 42.81). Under the regulations governing immigrant visas, the government must reconsider an initial refusal if "the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e). Because the plaintiff in *Berenjian* had not alleged that the additional information his fiancée had provided could overcome the grounds of ineligibility, and less than a

10

year had passed since the initial refusal, the Court concluded that the government had no further obligation to act. 2024 WL 3732451, at *3. That conclusion, however, does not answer the question before the Court today: whether the government has a further obligation to act after initially denying a nonimmigrant visa for administrative processing where the applicant has submitted all of the government's requested information.

After accounting for the mandatory language in § 41.121(c), this Court must join the numerous others that have held that the answer is "yes"; if the government initially denies a nonimmigrant visa application under § 221(g) for administrative processing, it must review that denial and come to a final decision. *See, e.g.*, *Canaza*, 2026 WL 811234, at *12-14; *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98-99 (D.D.C. 2020); *Nikjooy v. Rubio*, 804 F. Supp. 3d 76, 85 (D.D.C. 2025) (collecting cases). Accordingly, because Defendants have failed to take a "discrete" action that they are "required to take"—reviewing and rendering a final decision on Plaintiff's visa application—the Court has subject matter jurisdiction under the APA and the Mandamus Act to adjudicate Plaintiff's claims.

### C.    Consular Non-Reviewability

Lastly, Defendants argue that the Court must dismiss Plaintiff's claims under Rule 12(b)(6) because they are barred by the doctrine of consular non-reviewability. ECF 9 at 24-28. This argument is the corollary of Defendants' non-discretionary duty claim, and is therefore similarly unpersuasive.

The doctrine of consular non-reviewability "instructs that ordinarily, it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given [noncitizen]." *Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) (internal quotation marks omitted). Thus, under the doctrine, federal

11

courts are "plainly prohibit[ed] . . . from questioning [a] consular officer's visa determination." *Id.* at 316.

But Plaintiff does not ask this Court to overturn the Embassy's decision to initially deny his visa and place him in administrative processing. Rather, he asks this Court to remove him from his current limbo and require Defendants to finish that processing in a timely manner. Because the Court may do so without questioning the consular officer's initial visa determination, this Court will join the "majority of courts" and hold "that the doctrine of consular nonreviewability does not bar" Plaintiff's claim "to compel adjudication of a visa petition undergoing administrative processing." *Jahangiri*, 2024 WL 1656269, at *6 (collecting cases).

## IV.    CONCLUSION

After enduring extensive delays in the visa process and in this litigation, the Court's decision in this matter may offer Plaintiff only cold comfort. But, for the foregoing reasons, the Court concludes that Plaintiff has standing, the Court has jurisdiction over the matter, and consular non-reviewability does not bar its review. Accordingly, it is hereby

ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction and Failure to State a Claim (ECF 8) is DENIED.

**SO ORDERED.**

_/s/_
Michael S. Nachmanoff
United States District Judge

August 3, 2026
Alexandria, Virginia

12